IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

John V. Davis,                          )   C/A No. 1:10-1429-HMH-SVH
                                        )
                Plaintiff,              )
                                        )
    vs.                                 )
                                        )   REPORT AND RECOMMENDATION
Michael J. Astrue, Commissioner,        )
Social Security Administration,         )
                                        )
                Defendant.              )
_____ )

        This appeal from a denial of social security benefits is before the court for a Report

and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.).

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain

judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI").  The two issues before the court are whether the

Commissioner's findings of fact are supported by substantial evidence and whether he

applied the proper legal standards.  For the reasons that follow, the undersigned recommends

that the Commissioner's decision be reversed and remanded for further proceedings as set

forth herein.

I.      Relevant Background

        A.      Procedural History

        In 2006, Plaintiff filed applications for DIB and SSI under the Social Security Act

("the Act"), 42 U.S.C. §§ 401 433, 1381 1383c.  Tr. at 12, 103, 109.  In his applications, he

alleged his disability began on March 24, 2006.  Tr. at 103, 109, 157.  His applications were denied initially and upon reconsideration. Tr. at 51, 56.  On September 26, 2008, Plaintiff had a hearing before an Administrative Law Judge ("ALJ").  Tr. at 22  43 (Hr'g Tr.).  The ALJ issued an unfavorable decision on November 5, 2008, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 12  21.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1  3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on June 3, 2010.

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 35 years old at the time of the hearing.  Tr. at 22.  He completed the twelfth grade and received a certificate of completion  through a special education program. Tr. at 25.  He did not receive a diploma.  Tr. at 25.  He took welding classes through a vocational rehabilitation program.  Tr. at 25.   His past relevant work ("PRW") was as a welder, a general laborer, and a fork-lift operator.  Tr. at 15, 140, 148.  He alleges he has been unable to work since March 2006.  Tr. at 26, 157.

2.    Medical History

On April 11, 2005, Plaintiff went to Sea Island Medical Center for a regular medical check-up.  Treatment notes indicated he had a long history of gout, that he had a prior injury to his left leg, and that he had a new edema and possible cartilage tear in his left knee.  Tr.

2

at 253. His gout was stable at that visit, and he was referred to another physician regarding his knee. Tr. at 253. He returned to Sea Island Medical Center on June 17, 2005, expressed concern about his blood pressure and complained of lower back pain that was aggravated by sitting, bending, and twisting. Tr. at 251. He was prescribed medication and instructed to apply heat to his back and to rest. Tr. at 251.

On April 6, 2005, Plaintiff went to the emergency room at Colleton Medical Center with complaints of pain in his left knee. Tr. at 286. X-rays were taken, and the attending physician's clinical impression was that Plaintiff had internal derangement of his left knee. Tr. at 283. He prescribed a knee immobilizer, rest, and ice therapy. Tr. at 283.

Subsequently, he had an MRI of his left knee taken, and he saw Richard J. Friedman, MD, an orthopedist with Charleston Orthopaedic Associates, on April 21, 2005 to discuss the findings of the MRI. Tr. at 276. The MRI indicated Plaintiff's left knee had a tear of the lateral meniscus. Tr. at 276. Dr. Friedman recommended arthroscopic surgery on the knee, and Plaintiff agreed to go forward with that surgery. Tr. at 276.

On May 16, 2005, Dr. Friedman performed the surgery. His surgical notes indicated that Plaintiff tolerated the procedure well and left the operating room in stable condition. Tr. at 277 78. On May 26, 2005, Plaintiff saw Dr. Friedman, who noted Plaintiff's wounds had healed, and indicated Plaintiff was to begin physical therapy for motion and strength exercises. Tr. at 275. Plaintiff returned to Dr. Friedman on July 13, 2005, with complaints about weakness of the knee. Tr. at 274. Dr. Friedman indicated that Plaintiff had not been receiving physical therapy and emphasized that he needed to go to physical therapy

3

appointments and do strength exercises. Plaintiff was to see Dr. Friedman six weeks later. Tr. at 274. The record contains no further indication that Plaintiff returned to see Dr. Friedman.

On January 6, 2006, returned to Sea Island Medical Center with complaints of back and shoulder pain. Tr. at 250. He indicated he had pain from the neck to the low back and had weakness in both of his arms. Tr. at 250. Examination notes recorded pain that radiated into his legs and a positive straight leg raise test on his right side. Tr. at 250. The physician prescribed Lortab and bed rest, and he ordered an MRI. Tr. at 250.

Plaintiff had a lumbar MRI on January 13, 2006, that indicated he had lumbar spondylosis that was advanced for his age, and that was "most impressive at L4/5 where broad-based central protrusion extend[ed] slightly into both neuroforamina [and caused] severe right and moderate-to-severe left exit stenosis, probably impinging exiting L4 nerve roots." Tr. at 255. The MRI also indicated a shallow protrusion at L2/3 with an associated left paracentral annular tear. Tr. at 255.

Plaintiff went to the emergency room at Trident Medical Center on February 20, 2006, with complaints of severe back pain and numbness in his left arm. Tr. at 223 32. Plaintiff was diagnosed with multilevel disc disease and was referred to neurological surgeon Dr. Joseph Marzluff for a follow-up appointment. Tr. at 231. He was prescribed narcotic medication and was to keep his left arm in a sling for three-to-four days. Tr. at 231.

On March 6, 2006, Plaintiff saw Dr. Marzluff, who examined him and found he had moderately restricted range of motion in his back with increased pain when he moved his

4

neck. Tr. at 263. Dr. Marzluff's impression was that Plaintiff had cervical spondylosis. Tr. at 263. He noted that Plaintiff's known protrusion at L4-5 did not explain his neck and arm pain, and he recommended another cervical MRI. Tr. at 263.

A March 10, 2006 MRI, as interpreted by Troy Marlow, MD, indicated that Plaintiff had a C5-6 left paracentral protrusion that could affect existing left C6 nerve roots, a C6/7 right paracentral to intraforaminal protrusion that could affect the exiting right C7 nerve root, and C6/7 severe central canal stenosis without cord compression or signal abnormality. Tr. at 270–71. Dr. Marlow discussed his impressions with Dr. Marzluff. Tr. at 271.

On March 17, 2006, Plaintiff saw Dr. Marzluff to discuss the MRI findings and consider treatment options. Tr. at 262. Dr. Marzluff indicated Plaintiff had cervical spondylosis at C5-6-7 and that surgery was a reasonable option for treatment. Tr. at 262. Dr. Marzluff indicated that Plaintiff agreed to anterior fusion surgery. Tr. at 262. Plaintiff also complained of back pain during that visit, and Dr. Marzluff indicated Plaintiff was to receive an epidural steroid injection. Tr. at 262.

On March 28, 2006, Plaintiff was admitted to Trident Medical Center for his neck surgery. Tr. at 235. Dr. Marzluff performed the anterior cervical fusion at C5-6-7, and his operative report indicated Plaintiff was in satisfactory condition when awakened from surgery. Tr. at 267–68.

Two weeks after this operation, on April 10, 2006, Plaintiff returned to Dr. Marzluff for post-operative visit. Tr. at 262. He indicated that Plaintiff was "doing reasonably well," although he continued to complain of some neck and arm pain. Tr. at 262. Dr. Marzluff

5

noted that some pain at that point was expected.  Tr. at 262.  His physical examination reveals that everything was intact neurologically and that the surgical wound looked good. Tr. at 262.  In April and May 2006, Dr. Marzluff gave Plaintiff two epidural steroid injections in his lower back. Tr. at 321.  Although Plaintiff tolerated the injection procedures well, Dr. Marzluff noted Plaintiff had not had improvement after the first injection.  Tr. at 321.  On May 17, 2006, Dr. Marzluff gave the opinion that Plaintiff was "unable to return to work and should be considered permanently disabled" because of  "lumbar and cervical degenerative disc disease."  Tr. at 322. Dr. Marzluff did not give more specific limitations on Plaintiff's ability to work.

John Whitley, Ph.D., a clinical psychologist, evaluated Plaintiff on July 5 and August 3, 2006 in connection with his application for SSI benefits.  Tr. at 331.  Dr. Whitley interviewed Plaintiff, noting that Plaintiff denied behavior problems and that he had good relations with peers. Tr. at 331.  Dr. Whitley reported that Plaintiff complained of anger, irritation, poor concentration, and poor focus. Tr. at 332. Plaintiff told Dr. Whitley that he was able to bathe and dress appropriately, prepare simple foods using a microwave, drive, shop for food and household items with assistance, sweep, care for children with assistance, make simple change, watch television, and socialize with his family and girlfriend. Tr. at 332. Dr. Whitley observed that Plaintiff appeared pleasant, responsive, and maintained good eye contact. Tr. at 332 33.  He noted that Plaintiff appeared to be in pain and that he moved slowly to the exam room. Tr. at 333.  Dr. Whitley noted moderate depression and mild anxiety during the interview. Tr. at 333.

6

Dr. Whitley assessed Plaintiff's verbal I.Q. at 65, performance I.Q. at 68, and overall I.Q. at 63. Tr. at 333. He noted that Plaintiff could "experience great difficulty in keeping up with his peers in a wide variety of situations that require age-appropriate thinking and reasoning abilities." Tr. at 333. Dr. Whitley noted that Plaintiff's verbal comprehension index and verbal I.Q. scores were found to be generally comparable and placed him in the first percentile. Tr. at 334. His perceptual organization index scores and performance I.Q. scores were likewise compatible and indicated that his nonverbal reasoning abilities were far below those of his peers. Tr. at 334. Dr. Whitley assessed Plaintiff with a dysthymic disorder (Axis I), mild range mental retardation (Axis II), and found he had a global-adaptive-functioning level ("GAF") of 50. Tr. at 335. In his summary, Dr. Whitley reported that Plaintiff suffered from depression secondary to physical pain. Tr. at 335. He opined that Plaintiff's health could preclude him from performing his past work, which Dr. Whitley described as unskilled. Tr. at 335. Dr. Whitley noted that he had not reviewed any of Plaintiff's medical records. Tr. at 335. He opined that Plaintiff's ability to sustain effort and focus for the timely completion of assigned skills was poor and that his ability to use appropriate judgment and make simple work related decisions was guarded. Tr. at 335. Dr. Whitley also opined that Plaintiff would require assistance with the appropriate management of financial matters. Tr. at 335.

On July 14, 2006, Plaintiff returned to Sea Island Medical Center with complaints of back pain. Tr. at 343. He complained that his pain made it difficult to sleep, that he was depressed, and that he had a short temper. Tr. at 343. He described his pain as constantly

7

being an eight on a ten-point scale and that he had constant numbness in his feet.  Tr. at 343.

The examination notes indicate he was in obvious discomfort, was moving slowly, and had

a flat affect.   Tr. at 343.  Notes indicated he could not afford prescription medication and

that he should have returned to his neurosurgeon for follow-up care, but that Plaintiff did not

do so because he did not have the funding.  Tr. at 343.

On August 23, 2006, Plaintiff returned to Sea Island Medical Center with complaints

of back pain.  Tr. at 342.  On examination, the physician noted Plaintiff was in obvious pain.

Tr. at 342.  He prescribed Lortab for pain, but told Plaintiff he would not continue to write

prescriptions for him.  Tr. at 342.

Dr. K. Grabowski completed a "Physician's Statement" form for the South Carolina

Department of Social Services on August 23, 2006.  Tr. at 339.  He indicated that Plaintiff

could not engage in any type of employment because of degenerative disc disease with nerve

impingement.  Tr. at 339.  He also indicated Plaintiff could not sit, stand, or walk for more

than 10-15 minutes and that Plaintiff sometimes fell because his legs would not support his

weight.  Tr. at 339.  Dr. Grabowski further opined that Plaintiff needed help with activities

of daily living and that he could not lift more than two pounds.  Tr. at 339.  He indicated he

felt Plaintiff's disability was "permanent and total," and that he could benefit from going to

a pain clinic for ease of his symptoms.  Tr. at 339.

On September 6, 2006, consultant Patrick Jarrell, Ph.D. completed a Psychiatric

Review Technique form and considered the following sections of the Social Security

Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App.

1 ("the Listings"): 12.02 Organic Mental Disorders; 12.04 Affective Disorders; and 12.07 Somatoform Disorders.  Tr. at 347 60.  Regarding Listing 12.02, he opined that Plaintiff had a disorder that was medically determinable, but that Plaintiff's records did not support that claim.  Tr. at 348.  He noted that Plaintiff reported a history of taking special education classes, but that his records did not support that claim.  Tr. at 348.  Further, he noted that Plaintiff had earned well above the level of substantial gainful activity ("SGA") and indicated he had one year of college.[1]  Tr. at 348, 359.  Regarding Listing 12.04, Dr. Jarrell indicated that Plaintiff had a dysthymic disorder, but that it did not satisfy the diagnostic criteria set out in Listing 12.04.  Tr. at 350.  He found, too, that Plaintiff had a pain disorder that did not satisfy the criteria of Listing 12.07.  Tr. at 353.  He then rated Plaintiff's functional limitations in relation to Listings 12.02, 12.04, and 12.07 (the so-called "B-criteria" of those Listings), and found Plaintiff had moderate restrictions to the activities of daily living, moderate difficulties in maintaining social function and in maintaining concentration, persistence, and pace, but that he had suffered no episodes of decompensation.  Tr. at 357.  He then evaluated the "C-criteria" of Listings 12.02, 12.04, and 12.07, and found that Plaintiff's records did not satisfy those criteria.  Tr. at 358.  Dr. Jarrell noted that he considered Plaintiff's testing valid and that he was able to care for himself.  Tr. at 359.  Dr. Jarrell also considered Plaintiff's abilities in specific mental activities, and found Plaintiff had moderate limitations to his ability to understand and remember detailed instructions and

---

[1]The undersigned is unable to find any support in the record that Plaintiff attended college for one year.

9

to carry out detailed instructions, as well as to maintain attention and concentration for extended periods.  Tr. at 361.

On October 24, 2006, state agency consultant Katrina B. Doig, M.D., reviewed Plaintiff's records and completed a  residual functional capacity ("RFC") assessment.  Tr. at 366 72. She found Plaintiff would be capable of occasionally lifting 20 pounds, frequently lifting ten pounds, standing and/or walking and sitting for six hours in an eight-hour workday, and that Plaintiff's ability to push/pull would be limited in his upper extremities. Tr. at 367.  She found Plaintiff could occasionally climb ramps or stairs, and could stoop, kneel, crouch, or crawl.  Tr. at 368.  She indicated he could balance frequently, but that he could never climb a ladder, rope, or scaffolding.  Tr. at 368.  Dr. Doig opined that Plaintiff's ability to reach would be limited, finding he could occasionally lift overhead or bilaterally. Tr. at 369.  She found no other limitations on his ability to manipulate, nor did she find he had any visual, communicative, or environmental limitations.  Tr. at 369 70.  Dr. Doig concluded her assessment by noting that Dr. Marzluff had indicated Plaintiff could not return to work and was permanently disabled, and that Dr. Grabowski opined Plaintiff had no work capacity and would never be able to work, but she noted that those opinions were the type that were reserved for the Commissioner to make.  Tr. at 372.

On December 7, 2006, Plaintiff went to the Coastal Empire Community Mental Health Center complaining of pain.  Tr. at 375.  He reported that his "nerves were bad" and that was unable to sleep.  Tr. at 375.  He also indicated that one of his doctors (Dr. Lee) would not prescribe him any more pain medication until he went to a pain management

10

clinic. Tr. at 375 76.  In noting his mental status, the physician indicated Plaintiff had deficits in math and abstraction.  Tr. at 377.  The physician diagnosed him with an adjustment disorder and recommended that Dr. Lee consider prescribing Cymbalta.  Tr. at 378.  The physician also noted that the Coastal Empire Center did not have a pain management facility.  Tr. at 378.

On June 28, 2007, state agency consulting physician Charles Fitts, M.D. completed a physical RFC assessment.  Tr. at 323 29.  He opined that Plaintiff was capable of occasionally lifting 20 pounds, frequently lifting ten pounds, standing and/or walking and sitting for six hours in an eight-hour workday, and that Plaintiff's ability to push/pull was unlimited.  Tr. at 324. He projected that, as of March 28, 2007, which was one year after Plaintiff's neck surgery, Plaintiff would be able to perform light work.  Tr. at 325.  He found Plaintiff could occasionally climb ramps or stairs, and could stoop, kneel, crouch, or crawl.  Tr. at 325.  He indicated he could balance frequently, but that he could never climb a ladder, rope, or scaffolding.  Tr. at 325.  Dr. Fitts placed no limits on Plaintiff's manipulative, visual, or communicative abilities, and he opined Plaintiff needed no environmental limitations.  Tr. at 326 27.  He concluded by noting that Dr. Marzluff had indicated in May 2006 that Plaintiff was "totally and permanently disabled," but noted that the opinion did not take into account the results of his spinal fusion surgery that "might improve his situation."  Tr. at 329.

From October 3, 2006 through June 25, 2008, Plaintiff saw Dr. Barry Lee, an internist. Tr. at 380 92.  During some of those visits, Plaintiff complained of back and leg pain.  *See, e.g.*, Tr. at 385.

11

### C.    The Administrative Proceedings

#### 1.    The Hearing

Plaintiff and his sister, Eva Davis, testified before the ALJ at his September 26, 2008, hearing.  Tr. at 22  43.  He stated that he quit working in March 2006, after he awoke one morning with severe pain on his side.  He indicated he had neck surgery, but that he still had problems with his back and neck.  Tr. at 26.  He also indicated that the problems with his neck and back caused a tremor in both of his hands.  Tr. at 27.  He said he also had some leg problems and had undergone arthroscopic surgery on his left knee.  Tr. at 27.  He said he still had issues with his knee at times.  Tr. at 27.  He indicated he suffered from gout, which also caused leg pain.  Tr. at 28. He testified that doctors had informed him that he had pinched nerves that caused weakness in his legs, and that he was instructed to walk with a cane.  Tr. at 28  29.

He indicated that his pain was getting worse, but that he did not have the funds to go to a doctor.  Tr. at 30.  He said that Dr. Lee was trying to assist him.  Tr. at 30. Plaintiff said pain in his arms and hands kept him from being able to hold things.  Tr. at 30.  He testified that he could stand for about "25, 15 minutes" before his legs began hurting badly.  Tr. at 31. He said he could sit down for about 30 or 40 minutes.  Tr. at 31.  He indicated he sometimes needed help from his mother or sister with his buttons to get dressed.  Tr. at 31  32.

Plaintiff testified that he lived with his mother and that he could not help with household chores because he was usually seated or laying down.  Tr. at 32.  He said he could no longer hunt and fish.  Tr. at 32.  He indicated he had lost weight because he was depressed

12

over his physical condition, indicating his weight had decreased from over 400 pounds to approximately 200 pounds. Tr. at 32 33.

In response to questioning from the ALJ, Plaintiff indicated he had discussed additional surgery with Dr. Marzluff, but that he was told there was a 50/50 chance it would help with his pinched nerves. Tr. at 34. Plaintiff indicated the doctor recommended no additional surgery. Tr. at 34.

Plaintiff's younger sister testified that her brother had attended a school that offered special education classes and that he tried going to the same middle school that she attended, but had been unable to function there. Tr. at 35 36. Plaintiff was also taught how to weld in school. Tr. at 36.

Plaintiff's sister testified that Plaintiff's condition was worsening and that he could not obtain doctor's assistance because he could not pay. Tr. at 37. She indicated that he went to the mental health clinic because other doctors would not treat him. Tr. at 37 38. She said she often assisted him with dressing. Tr. at 39. She indicated he could no longer assist with household chores and that he often simply would not eat because he was depressed. Tr. at 40 41.

II.    Discussion

Plaintiff alleges that the ALJ erred because he did not undertake a proper analysis of whether Plaintiff met requirements of certain Listings, particularly 12.05C. He also claims that the ALJ improperly rejected opinions of his treating physicians. Plaintiff further alleges the ALJ did not appropriately consider all of his impairments in combination when deciding

13

whether Plaintiff was disabled. Finally, Plaintiff argues that the ALJ did not properly evaluate his credibility when considering his subjective complaints. The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    The ALJ's Findings

In his November 5, 2008 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since March 24, 2006, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: degenerative disc disease of the lumbar and cervical spine status post cervical fusion, status post left knee surgery and obesity (20 CFR 404.1521 *et seq*. and 416.921 *et seq*.).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work[2] as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited in his ability to reach. Moreover, the claimant's pain limits him to unskilled work.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on January 26, 1973 and was 33 years old, which is

---

[2]Light work activity involves lifting and carrying up to 20 pounds occasionally and 10 pounds frequently with walking, standing, and sitting for up to 6 hours each in an 8-hour day.

defined as a younger individual age 18  49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82  41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).

11.      The claimant has not been under a disability, as defined in the Social Security Act, from March 24, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 14  16, 19  20.

B.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings; (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step.).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82 62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational

16

expert ("VE") demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264  65 (4th Cir. 1981)*; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*,  *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157  58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the

17

entire record to assure there is a sound foundation for the Commissioner's findings and that

his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157 58; *see also Thomas v.*

*Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the

decision of the Commissioner, that decision must be affirmed "even should the court disagree

with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

        1.    The ALJ Appropriately Evaluated Whether Plaintiff Met or Medically
              Equaled Requirements of Listed Impairments.

Plaintiff's initial allegation of error is that the ALJ did not properly evaluate or

analyze his conditions in detail when considering whether he met or medically equaled

requirements of any of the "Listed" impairments. Pl.'s Br. at 7 8. Relying on *Cook v.*

*Heckler*, 783 F.2d 1168 (4th Cir. 1986), Plaintiff argues that the ALJ was required to

"identify the applicable or relevant listed impairments and then compare each of the listed

criteria to the evidence" of Plaintiff's symptoms. Pl.'s Br. at 7 (emphasis omitted). Plaintiff

does not indicate which of the Listed impairments he claims the ALJ should have reviewed

in detail or what particular evidence he believes satisfied which Listed impairment. Plaintiff

focuses only on Listing 12.05C, Mental Retardation, arguing that it is "fairly obvious" that

Plaintiff meets the criteria for that Listing. Pl.'s Br. at 8.

The Commissioner does not respond specifically to Plaintiff's general argument that

the ALJ is required to identify all relevant and potentially applicable Listings and evaluate

each. Instead, he focuses on Plaintiff's claim that the ALJ erred by not finding Plaintiff met

Listing 12.05C.  Def.'s Br. at 9  10.

The undersigned is of the opinion that the ALJ did not err in his consideration of whether Plaintiff's alleged mental impairment met or equaled one of the Listed impairments, nor has Plaintiff demonstrated error by the ALJ otherwise in the Listing analysis.  Regarding Plaintiff's argument that the ALJ did not properly consider whether he met or equaled any of the Listings generally, the ALJ discussed Listings 1.02 and 1.04 in connection with his step-three analysis and found claimant's severe impairments did not meet or equal those Listings.  Tr. at 15  16.  Plaintiff has not specifically challenged that portion of the ALJ's findings, and the court will not consider them further.

> a.    The ALJ Appropriately Considered Plaintiff's Claimed Mental Impairments.

In alleging that the ALJ erred in his Listing analysis, Plaintiff focuses only on Listing 12.05C, claiming the ALJ erred by not discussing the criteria for Listing 12.05C and finding his mental status met or medically equaled that Listing.  The undersigned recommends a finding that the ALJ did not err in his consideration of Plaintiff's claimed mental impairment.

Prior to reaching the analysis of whether a claimant meets or medically equals the criteria of a Listed impairment (step three), the Commissioner is to consider whether a claimant has established "a *severe* medically determinable impairment(s)" at step two of the five-step sequential analysis.  20 C.F.R. § 404.1525(c)(2) (emphasis added); *see also* 20 C.F.R. § 404.1526(a) (providing claimant may establish "medical equivalence" by showing his impairment must be "at least equal in severity and duration to the criteria of any listed

impairment"); 20 C.F.R. § 404.1520(c)(iii) ("At the third step, we also consider the medical severity of your impairment(s)."). The Commissioner's regulations define a "severe impairment" in the negative, explaining that a claimant does not have a severe impairment if he does not have any impairment or combination of impairments that "significantly limit[] [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). Only if an impairment is "severe," is the Commissioner to move to the next step of his analysis and determine whether the severe impairment(s) meet or medically equal a Listed impairment. *See, e.g., Washington v. Astrue*, 698 F. Supp. 2d 562, 581 (D.S.C. Mar. 17, 2010) (finding ALJ need not evaluate whether an impairment found to be nonsevere satisfies a particular listing).

The ALJ specifically considered whether Plaintiff had a mental impairment at step three of the five-step analysis and determined Plaintiff did not have a severe mental impairment. Because the ALJ found Plaintiff did not have a severe impairment, it was not necessary for him to consider whether his mental status equaled a Listing. The case on which Plaintiff relies, *Cook v. Heckler*, is not controlling because there, the Fourth Circuit remanded in part because the ALJ did not explain why the claimant's severe impairment of arthritis did not satisfy the Listing 1.01 criteria. *Cook*, 783 F.2d at 1173; *see also Washington*, 698 F. Supp. 2d at 581 (finding claimant's reliance on *Cook* misplaced in evaluating whether impairment ALJ found to be nonsevere satisfied a particular Listing).

At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the lumbar and cervical spine status post cervical fusion, status post left knee

surgery, and obesity. Tr. at 14. He then considered Plaintiff's additional complaints of gout and hypertension, but found they were not severe because there was no evidence that they caused any significant limitations. Tr. at 14.

Continuing his analysis, the ALJ discussed Plaintiff's claimed severe mental impairments, but found the evidence did not support a finding that Plaintiff had a severe mental impairment. Tr. at 15. He noted that Plaintiff was seen at a mental health center in December 2006 for symptoms of depression, but that he did not receive subsequent treatment. He found that no medical evidence indicated Plaintiff had anything "more than mild restrictions in the functional areas of activities of daily living, social functioning, and concentration, persistence or pace." Tr. at 15. He also found there was no evidence Plaintiff had suffered any episodes of decompensation. In finding Plaintiff suffered no severe mental impairments, the ALJ analyzed Dr. Whitley's findings that Plaintiff had a dysthymic disorder and that Plaintiff had a full scale I.Q. of 63, a verbal I.Q. of 64, and a performance I.Q. of 68. Tr. at 15. Plaintiff challenges the ALJ's treatment of Dr. Whitley's findings and opinion, and the court considers that challenge here.[3]

      b.    The ALJ Appropriately Considered Dr. Whitley's Findings and Opinion.

Citing 20 C.F.R. § 416.927, Plaintiff labels Dr. Whitley as one of his treating physicians and argues that the ALJ erred by discounting his findings regarding Plaintiff's I.Q. scores and diagnosis with dysthymic disorder without providing "persuasive contrary

---

[3] Plaintiff also ascribes error to the ALJ's treatment of the opinion of another treating physician, Dr. Marzluff. The court will consider Dr. Marzluff's opinion below.

21

evidence" to support his determination.  Pl.'s Br. at 9  10.  The Commissioner argues that the ALJ appropriately considered and discounted Dr. Whitley's findings.

The SSA typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, the court is to evaluate a treating physician's opinion "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (*citing* 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence).  Further, in undertaking review of the ALJ's treatment of a claimant's treating physician, the court remains mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."  *Craig*, 76 F.3d at 589.

22

In considering whether Plaintiff had a severe mental impairment, the ALJ noted that the I.Q. scores Dr. Whitley assessed for Plaintiff in July 2006 would place him in the "mild range of mental retardation." Tr. at 15. He determined that Dr. Whitley's findings were inconsistent with the record and were unsupported by treatment notes, so he afforded them little weight. Tr. at 15. In determining Dr. Whitley's diagnosis was not supported by the evidence, the ALJ pointed specifically to Plaintiff's ability to have taken a welding course and his semi-skilled and skilled PRW as a forklift operator and as a welder. Tr. at 15. In addition, he discussed Plaintiff's ability to perform daily living activities and his abilities in memory and concentration and found these contrary to a finding that Plaintiff had any mental disorder. Tr. at 15.

The ALJ also discussed Plaintiff's mental status and Dr. Whitley's opinion in the section of his decision discussing Plaintiff's RFC and evaluating opinions of treating and examining physicians. Tr. at 17. He noted that Dr. Whitley had assessed Plaintiff with a GAF of 50, which would indicate a "serious impairment in social and occupational functioning." Tr. at 17. Referring back to his discussion of Plaintiff's I.Q. scores, the ALJ found that Plaintiff's work history and widely ranging activities were inconsistent with a GAF score of 50. Tr. at 17.

The ALJ also referenced the findings of a consulting source who found Plaintiff had severe mental conditions that resulted in moderate limitations in the activities of daily living, social functioning, and maintenance of concentration, persistence, or pace. Tr. at 19 (referencing Ex. 12F, found in Tr. at 347 60). He again referred to his findings that

23

Plaintiff's work history and activities contraindicated a finding of a severe mental condition.

Based on the undersigned's review of the record, the ALJ's determination to discount Dr. Whitley's findings is supported by substantial evidence. As the Commissioner's regulations require, the ALJ evaluated the record surrounding Plaintiff's mental status and concluded that his mental status did not more than minimally impact his "ability to perform work activity." Tr. at 14 15. A portion of the ALJ's consideration of Dr. Whitley's findings involved his finding that Plaintiff's work as a welder and as a forklift operator indicated his intellect and mental abilities did not hinder him from performing work activity. Tr. at 15. The ALJ did not err in discounting Dr. Whitley's diagnoses.

The ALJ properly considered whether Plaintiff had a severe mental impairment, and his conclusion that Plaintiff did not have a severe mental impairment is supported by substantial record evidence. As a result, the undersigned recommends a finding that the ALJ did not err by not finding Plaintiff met the requirements of Listing 12.05C, nor did he err by not considering each requirement of Listing 12.05C in his decision. Because the undersigned is of the opinion that the ALJ appropriately found Plaintiff had no severe mental impairment and that the I.Q. test scores and diagnosis from Dr. Whitley were appropriate discounted by the ALJ, the undersigned does not further analyze the parties' arguments regarding the specific requirements of that Listing. The undersigned recommends that Plaintiff's first allegation of error be dismissed.

        c.     The ALJ Appropriately Evaluated the Opinion of Treating Source Dr. Marzluff.

Plaintiff also argues that the ALJ improperly discounted the opinion of Dr. Marzluff, who performed Plaintiff's March 2006 neck surgery. Pl.'s Br. at 9  10. The Commissioner counters that the ALJ appropriately considered and discounted Dr. Marzluff's opinion.

Dr. Marzluff performed an anterior cervical fusion at C5-6-7 on March 28, 2006. Tr. at 267  68. On May 17, 2006, Dr. Marzluff opined that Plaintiff was "unable to return to work and should be considered permanently disabled" because of "lumbar and cervical degenerative disc disease." Tr. at 322.

The ALJ indicated he considered Dr. Marzluff's opinion, but that he discounted it because it was "given only two months from the date of his neck surgery." Tr. at 19. He noted that, shortly before the time Dr. Marzluff indicated Plaintiff could not return to work, he had indicated Plaintiff was doing "reasonably well and was neurologically intact" and that Plaintiff's reported continued neck and arm pain was to be expected. Tr. at 18. The ALJ noted that Dr. Marzluff's treatment records did not include any post-operative objective clinical evidence to support his May 2006 opinion that Plaintiff was permanently disabled. Tr. at 18  19. The ALJ also found little other post-operative evidence of significant clinical findings regarding Plaintiff's back and arm pain. Tr. at 18. He considered Plaintiff's later treatment for neck and back pain issues at the Sea Island Medical Center and Dr. Lee and indicated those records included only two references of objective findings: a July 2006 record that Plaintiff's arm abduction was limited to 45 degrees and a November 2007

25

indication of slightly decreased upper extremity strength. Tr. at 18. Further, the ALJ noted that the opinion of whether a claimant is disabled is one reserved for the Commissioner. Tr. at 19 (*citing* 20 C.F.R. § 404.1527).

Plaintiff argues that the ALJ erred by discounting Dr. Marzluff's opinion "despite contrary medical evidence that [Plaintiff] continued to be limited by his spinal condition for years after that surgery." Pl.'s Br. at 10. Plaintiff does not provide additional specific argument regarding what evidence the ALJ did not consider. The undersigned agrees with the Commissioner that the ALJ's treatment of Dr. Marzluff's 2006 opinion was appropriate. The ALJ pointed to evidence that was contrary to Dr. Marzluff's opinion, finding it to be inconsistent with other evidence of record. *See Craig*, 76 F.3d at 590.

Dr. Marzluff treated Plaintiff only for a few months, and the ALJ noted that Dr. Marzluff's finding of "permanent disability" was not adequately supported by his own treatment notes. The ALJ also pointed out that the treatment records from July 2006 to June 2008, when Plaintiff was seen by Sea Island Medical Center and internist Dr. Lee, did not contain significant, objective findings that would support Dr. Marzluff's May 2006 opinion. Tr. at 18.

On April 10, 2006, two weeks after Dr. Marzluff completed Plaintiff's neck surgery, Dr. Marzluff saw Plaintiff and indicated he was doing "reasonably well" and was "neurologically intact." Tr. at 262. Although he saw Plaintiff on two more occasions, April 19, 2006 and May 3, 2006, Dr. Marzluff's treatment notes for these visits mentioned only the epidural injections he administered for Plaintiff's lower back pain and did not discuss his

26

neck pain. Tr. at 321.  Dr. Marzluff did not treat Plaintiff after May 2006. The ALJ reasonably found that these treatment notes did not support Dr. Marzluff's May 2006 opinion that Plaintiff was totally disabled.  Further, the ALJ properly observed that the issue of disability is reserved to the Commissioner. Tr. at 19.  Dr. Marzluff's conclusory opinion that Plaintiff was "totally disabled" did not deserve special weight.

> 2.    The ALJ Did Not Adequately Consider Plaintiff's Impairments in Combination.

Plaintiff also argues that the ALJ did not provide sufficient reasoning to support his finding that Plaintiff did not suffer from a combination of impairments that rendered him disabled.  Plaintiff argues that this error requires remand.  Pl.'s Br. at 8‑9.  The undersigned agrees.

Plaintiff claims that his combined impairments of degenerative disc disease and associated pain, impaired cognitive functioning, and dysthymic disorder, when taken together, should have caused the ALJ to find him disabled.  Citing the seminal Fourth Circuit case on this issue, *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989), Plaintiff argues that, even if impairments considered separately do not meet a Listing or otherwise make him disabled, the ALJ was required to consider the combined effect of his impairments and set forth an explanation regarding his findings as to the combined impact of all impairments on Plaintiff's disability status.  Pl.'s Br. at 9.

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires

27

that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Aurand v. Astrue*, 6:07-3968-HMH, 2009 WL 364389 (D.S.C. Feb. 12, 2009) (remanding with instruction that ALJ consider severe and medically-determinable nonsevere impairments in combination). Even if the claimant's impairment or impairments in and of themselves are not "listed impairments" that are considered disabling per se, the Commissioner must also "consider the *combined effect* of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B) (2004) (emphasis added). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. *Walker* instructs the Commissioner to consider the severe and nonsevere complaints and impairments in combination. *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.*

In response, the Commissioner argues that the ALJ appropriately considered all impairments and that the analysis *Walker* requires is limited to considering "whether Plaintiff's impairments meet or equal the requirements of a specific listed impairment." Def.'s Br. at 11. The Commissioner argues there could be no error because the ALJ adequately analyzed Plaintiff's claims at step three and found Plaintiff did not meet or medically equal a Listing. The court disagrees. The Commissioner's argument improperly narrows the analysis required by the ALJ of a claimant's impairments in combination.

The Commissioner's duty to consider the combined effect of Plaintiff's multiple

28

impairments is not limited to one particular aspect of its review, but is to continue "throughout the disability process." 20 C.F.R. § 404.1523.  Here, the ALJ failed to consider  or, at least failed to articulate whether and how he considered  Plaintiff's multiple impairments together, thereby violating 20 C.F.R. § 404.1523, which provides as follows:

> **Multiple Impairments**.  In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, *the combined impact of the impairments will be considered throughout the disability determination process*. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

*Id.* (italics added).  *See also Fleming v. Barnhart*, 284 F. Supp. 2d 256, 270 (D. Md. 2003) ("The ALJ is required to assess the combined effect of a claimant's impairments throughout the five-step analytical process.")

In this case, the undersigned recommends remand to the ALJ for his specific consideration of all of Plaintiff's severe and nonsevere impairments combined.  The ALJ should specifically consider the synergistic effect all impairments may have on Plaintiff's ability to work.  This must be done in connection with all steps in the sequential evaluation process.  The ALJ's declaration that "the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1520(d), § 404.1525 and

404.1526)[,]" (Tr. at 15), is insufficient under the law. *See Walker*, 889 F.2d at 50 (such a "finding in itself, however, is not sufficient to foreclose disability.")

By recommending further analysis of Plaintiff's impairments in combination, the undersigned does not suggest that, when all of his physical and mental impairments are considered in combination, Plaintiff necessarily meets or medically equals all requirements of Listing 12.05C. To the extent Plaintiff makes that argument, *see* Pl.'s Reply Br. at 3, the undersigned does not agree.

       3.    The ALJ Adequately Evaluated Plaintiff's Credibility in Considering His Subjective Complaints.

Plaintiff's final allegation of error is that the ALJ did not follow SSR 96-7p in evaluating Plaintiff's credibility for purposes of considering his subjective complaints. Pl.'s Br. at 10 11. The Commissioner counters that the ALJ followed SSR 96-7p and other applicable law in evaluating Plaintiff's testimony regarding his subjective complaints and provided sufficient factual findings regarding why he found some of the complaints less than credible. Def.'s Br. at 4 6.

SSR 96-7p requires that, prior to considering Plaintiff's subjective complaints, the ALJ must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of his subjective complaints, including

pain.  *See* SSR 96-7p, 61 Fed. Reg. 34483-01, 34484-85; *see also* 20 C.F.R. § 404.1529(b);

*Craig*, 76 F.3d at 591  96.  SSR 96-7p requires notes the ALJ to must consider the entire case

record in making credibility determinations.  Although objective medical evidence is a factor

for the ALJ to consider, as Plaintiff points out, SSR 96-7p cautions that a claimant's

"statements about the intensity and persistence of pain or other symptoms or about the effect

the symptoms have on his or her ability to work may not be disregarded solely because they

are not substantiated by objective medical evidence."  SSR 96-7p, ¶ 4.  *See* Pl.'s Br. at

10  11.

      The requirement of considering a claimant's subjective complaints does not mean the

Commissioner must accept those complaints on their face.  The ALJ may consider the

claimant's credibility in light of his testimony and the record as a whole.  If he rejects a

claimant's testimony about his pain or physical condition, the ALJ must explain the bases

for such rejection to ensure that the decision is sufficiently supported by substantial evidence.

*Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (*quoting*

*Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)).  "The determination or decision

must contain specific reasons for the finding on credibility, supported by the evidence in the

case record, and must be sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the individual's statements and the

reasons for that weight."  SSR 96-7p, 61 Fed. Reg. at 34486.

      Here, after setting forth the applicable regulations, the ALJ considered Plaintiff's

subjective claims under the required two-step process.  *See Craig*, 76 F.3d at 591  96.  The

ALJ found Plaintiff's impairments could reasonably be expected to cause some of the symptoms Plaintiff alleged.  Tr. at 17.  However, he found that the hearing testimony "concerning the intensity, persistence and limiting effects" of his symptoms was "not entirely credible to the extent" the testimony was inconsistent with the ALJ's determination of Plaintiff's RFC.  Tr. at 17.

The undersigned is of the opinion that the ALJ adequately considered Plaintiff's subjective complaints and articulated his reasons for finding Plaintiff's claims about his pain less than fully credible. The ALJ's determination is supported by substantial evidence.

In discussing his findings regarding Plaintiff's subjective complaints, the ALJ referenced the lack of objective medical evidence to support the extent of Plaintiff's claims, Plaintiff's daily activities, and his failure to seek treatment for his claimed depression.  In considering Plaintiff's subjective claims of depression, the ALJ found that, although Plaintiff claimed he was depressed, "the medical evidence fails to reveal that the claimant has required any significant treatment for this condition, namely mental health counseling or psychiatric hospitalization." Tr. at 17. The ALJ appropriately considered Plaintiff's failure to seek treatment in assessing his credibility.  *See* 20 C.F.R. § 404.1529(c)(3)(v) (noting "[t]reatment, other than medication" claimant has received for subjective claim is factor Commissioner considers in evaluating symptoms).

Plaintiff argues that the ALJ erred by considering the lack of objective evidence in evaluating his credibility. *See* Pl.'s Br. at 11.  Although he alludes to a recent Fourth Circuit opinion on the topic, he does not cite such an opinion.  *See* Pl.'s Br. at 11.  The undersigned

32

agrees with the Commissioner that a lack of objective medical evidence may be used as a factor in a credibility analysis, so long as there are other valid reasons to question Plaintiff's credibility: "A report of negative findings from the application of medically acceptable clinical and laboratory techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility." SSR 96-7p.

The undersigned is of the opinion that the ALJ properly considered the lack of objective evidence supporting Plaintiff's claims in assessing credibility. Tr. at 17. Plaintiff described severe limitations at the hearing before the ALJ. However, the ALJ found that these claims were generally unsupported by objective evidence. Plaintiff underwent surgery on his neck, a cervical disc fusion, on March 28, 2006. Tr. at 240. Two weeks after surgery, Dr. Marzluff wrote that Plaintiff was "doing reasonably well" although he continued to experience some pain "as would be expected." Tr. at 262. Plaintiff returned to Dr. Marzluff and received epidural steroid injections for his lower back in the following months, April and May 2006. Tr. at 321. After this three-month period, the ALJ reasonably found that Plaintiff's condition improved and that there was a lack of significant clinical findings. The ALJ noted that there were only two objective findings of neck pain following Plaintiff's neck operation. Tr. at 18. In July 2006, it was found that Plaintiff was unable to abduct (draw away from the midline of the body) his arms more than 45 degrees. Tr. at 343. In August 2006, it was noted in the subjective ("S") portion of a treatment note that Plaintiff was "unable to raise arms." Tr. 342. Plaintiff saw internist Dr. Lee intermittently throughout the relevant period. Although he referred to Plaintiff's history of cervical spine surgery at least

once, Dr. Lee's treatment notes generally relate to routine appointments for high blood pressure, a flu, and prescription refills. *See* Tr. at 380  88. The undersigned finds the ALJ reasonably looked to this record and found a lack of objective evidence to fully support Plaintiff's claims of limitations caused by neck and back pain. Further, the ALJ found that Plaintiff's degenerative disc disease imposed some limitations on his use of his arms, as reflected in his RFC. Tr. at 18.

True to SSR 96-7p, the ALJ did not rely solely on the absence of objective medical evidence in assessing credibility.  He also examined Plaintiff's daily activities, finding that Plaintiff engaged in daily activities that were inconsistent with his claimed degree of pain and limitation. Tr. at 17. *See Johnson*, 434 F.3d at 658. In *Johnson,* the Fourth Circuit upheld the ALJ's credibility finding for a claimant who "testified that she attends church twice a week, reads books, watches television, cleans the house, washes clothes, visits relatives, feeds the family pets, cooks, manages her household finances, and performs the stretches recommended by her chiropractor." *Id.* Here, the ALJ observed that Plaintiff was able to "bathe and dress appropriately, prepare simple meals, drive (although he does not), shop for food and household items with assistance, sweep, care for children with assistance, watch television, socialize with his family, maintain a relationship with his girlfriend and make simple change when shopping."  Tr. at 17.  This finding was supported by the record, and it was reasonable for the ALJ to find that these activities were inconsistent with Plaintiff's claimed limitations, such as his claimed inability to stand for more than 15-to-25 minutes or sit for more than 30-to-40 minutes.  Tr. at 31, 322.

The ALJ's consideration of Plaintiff's daily activities in evaluating his credibility was appropriate, well explained, and supported by substantial evidence. The undersigned recommends this allegation of error be dismissed.

III.    Conclusion and Recommendation

Based on the above, the undersigned recommends that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action as set out herein.

IT IS SO RECOMMENDED.

March 31, 2011                            Shiva V. Hodges
Florence, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**